1

2

3

4                          UNITED STATES  DISTRICT COURT

5                            Northern District of California

6

7   LUCY MCALLISTER,                            No. C 11-03858 MEJ

8                    Plaintiff,                 **ORDER RE DEFENDANTS' MOTION**
                                                **TO DISMISS, OR IN THE**
9          v.                                   **ALTERNATIVE, FOR SUMMARY**
                                                **JUDGMENT [Dkt. No. 18]**
    UNITED STATES OF AMERICA,
10
                     Defendant.
11   _____/

12

13                              **I.  INTRODUCTION**

14          Plaintiff Lucy McAllister filed this premises liability action against the Government and

15   various federal agencies and employees[1] pursuant to the Federal Tort Claims Act ("FTCA"), 28

16   U.S.C. § 1346(b), alleging that while she was running on a path in Crissy Field, a federal park, she

17   tripped on a piece of cement protruding from a path and sustained serious injuries.  In her Complaint,

18   she asserts claims for: (1) dangerous condition on public property; (2) negligent failure to maintain

19   property; and (3) negligent construction.[2]

20          The Government now moves to dismiss Plaintiff's action pursuant to Federal Rule of Civil

21   Procedure 12(b)(1) for lack of jurisdiction, or in the alternative, for summary judgment on her claims.

22   Dkt. No. 18.  Plaintiff opposes the Motion, arguing that the Court properly has jurisdiction over her

23   claims and triable issue of material fact exist precluding summary judgment.  On June 6, 2013, the

24

25          [1]  Plaintiff has sued the United States; the Department of the Interior; Ken Salazar, Secretary
    of the U.S. Department of the Interior; the National Park Service ("NPS"); Daniel Wenk, Director of
26   the NPS; Frank Dean, acting General Superintendent of Golden Gate Recreation Area.

27
            [2]  The Government indicates that Plaintiff has voluntarily dismissed her negligent
28   construction claim.  *See* Simmons Decl., Ex. 4.  During the hearing on this matter, Plaintiff
    confirmed that the claim is no longer at issue.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Court held oral argument.  For the reasons set forth above, the Court **GRANTS** the Government's Motion with respect to dismissal of the agency and individual federal defendants and **GRANTS** the motion to dismiss Plaintiff's dangerous condition claim based on a negligent design theory.  The Court **DENIES** the Motion **WITHOUT PREJUDICE** as to Plaintiff's negligent maintenance claim.

## II.  BACKGROUND

**A.     Factual Background**

The relevant facts are as follows.

Crissy Field is part of the Golden Gate National Recreation Area operated and maintained by the National Park Service.  Opp. at 1.  On the morning of September 30, 2010, Plaintiff was running on the East Beach area of Crissy Field on a path which connects to a concrete foot bridge leading to the parking lot area.  *Id*.  Plaintiff alleges that as she approached the footbridge, her foot caught on an exposed edge of cement, causing her to trip, launch forward, and fall forward toward the ground.  *Id*. As a result, Plaintiff suffered serious injuries to her right shoulder, arm, and palm.  *Id*. at 1-2.

**B.     Overview of Defendant's Motion**

The Government presents four arguments in its Motion.

First, the Government argues that the only proper defendant in a lawsuit brought under the FTCA is the United States.  Mot. at 11-12.  It therefore argues that the claims against federal Defendants other than the United States must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Second, the Government argues that the Court lacks jurisdiction over Plaintiff's claims because the conduct underlying such claims falls within the discretionary function exception to the FTCA.  *Id*. at 12.  It therefore contends that dismissal is appropriate pursuant to Rule 12(b)(1).

Third, the Government asserts that Plaintiff's claims should be dismissed because California's Recreational Use Statute immunizes the United States from liability.  *Id*. at 19.

Fourth, the Government argues that even if Plaintiff's claims are not dismissed, it is entitled to summary judgment because Plaintiff assumed the risk of engaging in the sport of night running and lacks evidence to establish the Government was negligent.  *Id*. at 22.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

2

UNITED STATES DISTRICT COURT
For the Northern District of California

### III.  DISCUSSION

**A.      The United States is the Only Proper Defendant Under the FTCA**

As indicated above, Plaintiff brings her claims against the United States, the Department of the Interior, the NPS, Ken Salazar, Daniel Wenk, and Frank Dean pursuant to the FTCA.  The Government argues that the FTCA only authorizes suits against the United States, and thus all other federal defendants must be dismissed.  The Court agrees with the Government.

The FTCA, 28 U.S.C. §§ 1346(b), 2671–80, waives the sovereign immunity of the United States for certain torts committed by federal employees.  *FDIC v. Meyer*, 510 U.S. 471, 477 (1994).  It provides that district courts have exclusive jurisdiction of civil actions against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the federal government while acting within the scope of his office or employment.  28 U.S.C. § 1346(b).

Here, the Government argues that any federal defendants other than the United States must be dismissed from this lawsuit because under the FTCA, only the United States is a proper Defendant.  Further, it argues that the Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA") of 1988, 28 U.S.C. § 2679(b)(1), immunizes federal employees against tort liability arising from activities which they perform within the scope of their employment.

Plaintiff, however, maintains that neither the FTCA nor the FELRTCA preclude her from naming the other Federal Defendants as defendants in this action.  Plaintiff also argues that the FELRTCA does not apply because the Government failed to obtain the required certification from the Attorney General.

As the Government correctly points out, it is well-established that the FCTA only authorizes lawsuits against the United States.  Recently, the district court in *Nandin v. United States*, 2013 WL 1935357, at *3-4 (C.D. Cal. Mar. 27, 2013), squarely addressed this issue.  In that case, the plaintiff sued the United States and several Bureau of Prisons employees for negligence under the FTCA.  As in this case, the Government moved to dismiss the individual defendants pursuant to 12(b)(1).  In considering the motion, the district court succinctly explained:

UNITED STATES DISTRICT COURT
For the Northern District of California

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994). "Through the FTCA the United States has waived its sovereign immunity for injuries arising from the tortious acts or omissions of the United States, its agents, and employees." *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998). But because "[s]overeign immunity is jurisdictional in nature ... the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Meyer*, 510 U.S. at 475 (citation omitted). Thus, this court's jurisdiction to hear the FTCA claim in this case is limited to the extent of the United States' waiver under the FTCA, and that waiver does not extend beyond the United States itself.

Under the FTCA, a claim against the United States is the "exclusive" remedy for plaintiffs seeking to recover damages from the "negligent or wrongful act or omission of any employee of the Government . . . acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). The FTCA holds that individual government employees are not personally liable for tort claims against them while acting in the course and scope of their employment. 28 U.S.C. § 2679(d). Instead, "the United States is the only proper party defendant in an FTCA action . . . ." *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (per curiam) (affirming dismissal of FTCA action against federal agency and federal employee sued in his official capacity); *accord Craft*, 157 F.3d at 706 (the FTCA "only allows claims against the United States"). Accordingly, the first claim should be dismissed as against all the defendants except the United States.

*Id.* Other courts have recognized this principle and dismissed individual defendants where no other basis for jurisdiction exists except the FTCA. *See, e.g., Baires v. United States*, 2011 WL 6140998, at *2 (N.D. Cal. Dec. 9, 2011) (dismissing individual federal defendants and federal agency from FTCA claim, in part because "individual federal defendants cannot be sued under the FTCA."); *Johnson v. U.S. Air Force*, 2010 WL 1780231, at *8 (E.D. Cal. Apr. 30, 2010) (finding that federal employees are not personally liable for torts committed while acting within the course and scope of their employment, the exclusive remedy is an action against the Government under the FTCA, and thus dismissing the Secretary of the Air Force and other military officers from FTCA claim); *Gamage v. United States*, 217 F. Supp. 381, 382-83 (N.D. Cal. 1962) (dismissing twenty fictitious defendants alleged to be employed by the U.S. Air Force and holding that, "There is no provision in the Federal Tort Claims Act giving a United States District Court jurisdiction over individuals as defendants."); *Messer v. Copenhaver*, 2013 WL 2286126, at *4 (E.D. Cal. May 23, 2013) ("The United States is the only proper defendant in a suit brought pursuant to the FTCA").

The Court finds the reasoning set forth in the foregoing cases to be sound and takes the same approach in this case. Accordingly, because the FTCA does not allow suits against individual

4

1  defendants, the Court **DISMISSES** Plaintiff's action against all Defendants except the United States.

2  **B.       Discretionary Function Exception**

3       The Government next argues that the FTCA's waiver of sovereign immunity is inapplicable in

4  this case because the discretionary function exception, set forth in 28 U.S.C. § 2680(a), applies and

5  bars Plaintiff's claims.  Mot. at 12.

6       1.    Legal Standard

7       As indicated above, the FTCA provides a limited waiver of the sovereign immunity of the

8  United States for torts committed by federal employees acting within the scope of their employment.

9  *United States v. Olson*, 546 U.S. 43, 44 (2005).  This waiver, however, is limited by a number of

10  statutory exceptions.  28 U.S.C. § 2680; *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir.

11  2008).  If the plaintiff's claim falls within one of these statutory exceptions, the general rule of

12  sovereign immunity applies, and the Court must dismiss the action for lack of subject matter

13  jurisdiction.  *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).  Thus, if the discretionary

14  function exception to the FTCA applies to Plaintiff's negligent maintenance and dangerous condition

15  claims, the action must be dismissed.  *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1173 (9th

16  Cir. 2002); *see also Cleveland v. United States*, 546 F. Supp. 2d 732, 752 (N.D. Cal. 2008) ("[a]

17  motion to dismiss on the basis of the discretionary function exception to the FTCA is treated as a

18  motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

19  12(b)(1)").  Under Rule 12(b)(1), a party may bring "either a facial or factual" challenge to

20  subject-matter jurisdiction based on the discretionary function exception.  *White v. Lee*, 227 F.3d

21  1214, 1242 (9th Cir. 2000). In either instance, the government "bears the burden of proving the

22  applicability of the discretionary function exception" and the court "accept[s] as true the factual

23  allegations in the complaint."  *Terbush*, 516 F.3d at 1128; *see also United States v. Gaubert*, 499 U.S.

24  315, 327 (1991).  When analyzing a factual attack, the Court may consider affidavits or other

25  evidence and resolve disputes where necessary.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

26  1039 (9th Cir. 2004) (citation omitted).

27       When issues relating to jurisdiction and the underlying merits of a claim are intertwined, the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

5

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   Court reviews the parties' filings under the summary judgement standard.  *Id.* at 1039–40 (citation

2   omitted).  Where the summary judgment standard governs, the "plaintiff has the burden of showing

3   there are genuine issues of material fact as to whether the [discretionary function] exception should

4   apply, but the government bears the ultimate burden of establishing that the exception applies."

5   *Green v. United States*, 630 F.3d 1245, 1248–49 (9th Cir. 2011) (citing *Miller v. United States*, 163

6   F.3d 591, 594 (9th Cir. 1998)).

7          2.    <u>Overview</u>

8          The discretionary function exception precludes claims against the United States which are

9   "based upon the exercise or performance or the failure to exercise or perform a discretionary function

10  or duty on the part of a federal agency or an employee of the Government, whether or not the

11  discretion was abused."  28 U.S.C. § 2680(a).  As the Supreme Court explained, "The discretionary

12  function exception, embodied in the second clause of § 2680(a), marks the boundary between

13  Congress' willingness to impose tort liability upon the United States and its desire to protect certain

14  governmental activities from exposure to suit by private individuals."  *United States v. S.A. Empresa*

15  *de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).  To survive a motion to

16  dismiss for lack of subject matter jurisdiction, the plaintiff must make out a claim that is "facially

17  outside the discretionary function exception."  *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009).

18  The Government bears the burden of proving the applicability of the discretionary function exception.

19  *Prescott v. U.S.*, 973 F.2d 696, 702 (9th Cir. 1992).

20         To determine whether the discretionary function exception applies, courts apply the two-part

21  test articulated in *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  First, the Court

22  must determine whether the challenged conduct involves "an element of judgment or choice."

23  *Berkovitz*, 486 U.S. at 536; *see Gaubert*, 499 U.S. at 322; *Myers v. United States*, 652 F.3d 1021,

24  1028 (9th Cir. 2011).  "[T]he discretionary function exception will not apply when a federal statute,

25  regulation, or policy specifically prescribes a course of action for an employee to follow.  In this

26  event, the employee has no rightful option but to adhere to the directive.  And if the employee's

27  conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the

28

1   conduct for the discretionary function exception to protect." *Berkovitz*, 486 U.S. at 536; *see also*

2   *Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001).

3          Second, the Court "must determine that judgment is of the kind that the discretionary function

4   exception was designed to shield." *Berkovitz*, 486 U.S. at 536.  Particularly, in carving out the

5   discretionary function exception, Congress sought to "prevent judicial 'second-guessing' of

6   legislative and administrative decisions grounded in social, economic, and political policy through

7   the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814.  "The exception, properly

8   construed, therefore protects only governmental actions and decisions based on considerations of

9   public policy." *Berkovitz*, 486 U.S. at 536.  Thus, "[w]here Congress has delegated the authority to

10  an independent agency or to the Executive Branch to implement the general provisions of a

11  regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions

12  establishing programs are protected by the discretionary function exception, as is the promulgation of

13  regulations by which the agencies are to carry out the programs.  In addition, the actions of

14  Government agents involving the necessary element of choice and grounded in the social, economic,

15  or political goals of the statute and regulations are protected." *Gaubert*, 499 U.S. at 323.  The Ninth

16  Circuit has recognized that the focus of the second prong of the *Berkovitz* analysis is whether the

17  decision is "susceptible" to a policy analysis, not whether the individual decision maker actually

18  considered such policies. *Terbush*, 516 F.3d at 1131.

19          3.    <u>Analysis</u>

20          In its Motion, the Government argues that the discretionary function exception applies to

21  Plaintiff's claims and therefore the Court must dismiss the action for lack of jurisdiction.  In her

22  Opposition, Plaintiff focuses exclusively on her negligent maintenance claim, arguing that Defendant

23  failed to disclose and has not presented evidence regarding a specific maintenance policy, and that

24  claims based on routine maintenance – which she argues is what is at issue in this case – are outside

25  the scope of the discretionary function exception.

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

###### a.    Negligent Maintenance

The first issue the Court must address is whether the NPS's maintenance plan or decisions with respect to how the path and footbridge is maintained (in the event no formal plan exists) involves "an element of judgment or choice." *Berkovitz*, 486 U.S. at 536.

The Government contends that "Plaintiff has presented no evidence that the NPS has violated a mandatory policy and the evidence demonstrates that the decisions being challenged in this lawsuit are discretionary." Mot. at 16.  Notably, the Government fails to identify *what those decisions are.* For purposes of determining whether the discretionary function exception applies, the Government must be able to identity what the maintenance decisions were so that the Court may evaluate whether they are discretionary in nature.  At most it argues that "to the extent plaintiff is claiming the Park Service adopted a negligent maintenance plan, the plan is integral to the decision to use the composite granite that both the decision to use the material and the plan to maintain it are both equally discretionary." *Id*. at 15.  Again, the Government's statement only begs the question: what is the plan to maintain the footbridge and path?  In a footnote in its Motion, the Government asserts:

> Clearly, plaintiff has not specified the decisions being challenged because plaintiff has not undertaken discovery to apprise herself of the facts regarding the maintenance plan, the actual maintenance activities undertaken during the relevant time not the policies relevant to the maintenance decisions.  Accordingly, plaintiff's contention that liability should be imposed amounts to a sort of "res ipsa locquitor" argument that is not appropriate for addressing this jurisdiction issue.

Mot. at 17. n.2

This illustrates the quandry posed by the parties' papers.  The Government bears the burden of establishing that the discretionary function exception applies.  To do this, the Government – as the party asserting immunity under the exception – must identify the decision it contends is covered by the exception.  Merely arguing that Plaintiff has failed to identify the maintenance plan or decision that forms the basis of her claim does not enable the Government to carry its burden in the first instance.  If Plaintiff's Complaint lacked specificity on this issue, the Government had ample time during discovery to tease out the specifics of Plaintiff's negligent maintenance claim.  The Government cannot now argue that it does not know the facts underlying Plaintiff's negligent

UNITED STATES DISTRICT COURT
For the Northern District of California

1    maintenance claim and at the same time urge the Court to dismiss such a claim because the

2    maintenance plan – which it fails to identify or explain – is discretionary in nature.

3           Plaintiff's Opposition does not offer any assistance on this issue.  She merely states that,

4    "[h]ere, Plaintiff claims Defendant failed to maintain the area where the trail meets the footbridge

5    abutment, where the cement juts up, and where fill is needed to make a smooth transition from the

6    trail to the footbridge.  The negligent failure to maintain the trail was not a decision based on social,

7    economic or political policy and therefore is not covered under the exception."  Opp. at 5.  Plaintiff's

8    Opposition is devoid of facts regarding the footbridge maintenance plan and why that specific

9    maintenance plan and its promulgation by the NPS is mandatory, rather than discretionary.  Instead,

10   Plaintiff attributes this omission to the Government's failing to disclose a specific policy regarding

11   maintenance of the path during discovery.  *Id.* at 4.

12          Thus, the parties expect this Court to make a decision about whether the NPS maintenance

13   plan (which is yet unidentified) for the path in Crissy Field involves an element of judgment or

14   choice in a vacuum.  The only evidence the Government has presented regarding the maintenance

15   plan for Crissy Field is the testimony of Jeffrey Obirek, a maintenance mechanic supervisor with the

16   Golden Gate National Recreation Area.  Dkt. No. 19. at ¶¶ 1-2.  Mr. Obirek, however, proffers

17   minimal information regarding the maintenance procedures of the footbridge.  The only relevant

18   testimony from Mr. Obirek about maintaining the footbridge are the following paragraphs:

19          5.    The National Parks Service made the decision to cover this area with a
                 composite material called "decomposed granite," or "DG."  The DG is treated
20               with a stabilizer to make it as sturdy as possible under the conditions it is likely
                 to face on Crissy Field.  The decision to use this material as the surfce for the
21               trail as it meets the bridge is rooted in numerous considerations.  For example,
                 the surface needed to be (1) sufficiently permeable to allow a certain minimum
22               amount of moisture to enter, (2) sufficiently resilient to allow bicycles and
                 pedestrians to use it safely, (3) capable of working well with, and integrating
23               with, the sand blowing from the nearby beach, and (4) sufficiently amenable to
                 maintenance with existing and projected budgets.  The design of the bridge
24               specifically provides for a 1 inch rise between the decomposed granite and the
                 cement portion of the bridge.  The area of the trail, including the bridge, also is
25               used by a relatively high volume of dogs.  As a result, maintenance of the area
                 is a constant and ongoing enterprise and requires at least once daily visits by
26               park staff.

27

28

6.      It is not uncommon for conditions overnight to erode a sufficient amount of the decomposed granite away such that an area needs to be filled in two days in a row. Rain, wind and bicycles can all affect the DG after staff have gone home for the day.

Obirek Decl. ¶¶ 5-6.  Essentially, the only information in the record about the maintenance plan at issue is that maintenance of the portion of the foot trail that meets the concrete slab "is a constant and ongoing enterprise and requires at least once daily visits by park staff," and because of erosion, the decomposed granite sometimes "needs to be filled in two days in a row."  Assuming this is the maintenance plan, the question, then, is whether this plan is discretionary in nature.

On this point, the Government argues that Plaintiff "has failed to identify a mandatory regulation with which the NPS failed to comply with respect to maintenance or otherwise allowing the condition to exist."  Mot. at 15.  It also argues that "the applicable statutes, regulations, and policies all make clear that the NPS and the managers at each park, including the Golden Gate National Recreation Area, all possess tremendous discretion in choosing how to balance preserving environmental, cultural, and historical lands and structures with providing a safe and enjoyable experience for park users," and cites the Organic Act, 16 U.S.C. § 1, and several chapters of the NPS's 2006 Management Policies Manual in support.  *Id.*

Looking first at the Organic Act, this statute provides:

The [National Park] Service thus established shall promote and regulate the use of Federal areas known as national parks, monuments and reservations . . . by such means and measures as conform to the fundamental purpose of the said parks, monuments and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1.  The Government contends that the Organic Act and its implementing regulations (36 C.F.R. § 1 *et seq.*) do not contain mandatory directions regarding how to avoid dangers in general, let alone specific dangers for pedestrians and runners using the pathway leading to the footbridge. Rather, it asserts that "the statutes simply provide the broad mandate that NPS must balance preservation with public access, which necessarily requires the NPS to exercise judgment in determining what structures and safety measures, if any to provide."  Mot. at 16.  The Government also cites *Blackburn v. United States*, 100 F.3d 1426, 1431 (9th Cir. 1996), in support.  In *Blackburn*,

the plaintiff sued the United States pursuant to the FTCA after he was injured while diving off a bridge in Yosemite National Park, claiming that the government was negligent in failing to warn of the danger of diving off a bridge and in failing to properly design and maintain the bridge and watercourse under it. *Id*. at 1428-29. The trial court granted summary judgment in favor of the United States, finding that the discretionary function exception to the FTCA applied. On appeal, the Ninth Circuit affirmed. Reviewing several sections of the NPS Management Policies Manual regarding visitor safety, inspection, and warnings, the Ninth Circuit agreed with the trial court, finding:

> T]he statutes and regulations under which the NPS operated in the present case necessarily encompass an element of discretion in deciding how and when to warn the public of known dangers. Although the policy manuals outline general policy goals regarding visitor safety, they do not set out the specific means by which the NPS employees are to meet these general goals. Furthermore, the policy manuals' broad mandate to warn the public of and protect it from special hazards involves the exercise of discretion in identifying such hazards, in determining which hazards require an explicit warning and in determining the precise manner in which to warn it of those hazards. *See Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995); *Childers v. United States*, 40 F.3d 973, 976 (9th Cir. 1994).

*Id*. at 1431. Thus, as to the first prong of the *Berkovitz* analysis, the court held that, "the general policy guidelines and regulations under which the NPS operated at the time of the accident did not impose mandatory duties of care, but instead created 'broad policy goals attainable only by the exercise of discretionary decisions.'" *Id*. at 1433 (quoting *Valdez*, 56 F.3d at 1180). The Ninth Circuit also found that the second prong was satisfied because NPS's decision to warn the public of the danger of diving from the bridge by placing signs on and around the bridge was the result of NPS balancing competing policy consideration in determining how to warn the public of the hazard, which the court characterized as "precisely the kind the discretionary function exception was intended to immunize from suit." *Id*. at 1434 (quoting *Childers*, 40 F.3d at 976).

Second, the Government cites to Chapters 8.2.5.1, (Visitor Safety), 9.1.3 (Construction), and 9.1.4.1 (Maintenance) of the NPS Management Policies 2006. These Chapters provide:

8.2.5.1 Visitor Safety

[. . . .]

The Service recognizes that the park resources it protects are not only visitor attractions, but that they may also be potentially hazardous.  In addition, the recreational activities of some visitors may be of especially high-risk, high-adventure types, which pose a significant personal risk to participants and which the Service cannot totally control.  Park visitors must assume a substantial degree of risk and responsibility for their own safety when visiting areas that are managed and maintained as natural, cultural, or recreational environments.

These management policies do not impose park-specific visitor safety prescriptions. The means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing.  Examples include decisions about whether to install warning signs or artificial lighting . . . .  Some forms of visitor safeguards typically found in other public venues – such as fences, railings, and paved walking surfaces – may not be appropriate or practicable in a national park setting.

9.1.3 Construction

The Service will incorporate sustainable principles and practices into design, siting, construction, building materials, utility systems, recycling of all unusable materials, and waste management.  Best management practices will be used for all phases of construction activity, including preconstruction, actual construction, and postconstruction. Although construction of new assets is often a viable alternative for meeting visitor needs or protecting resources, the Service will consider nonbuild alternatives to meet its needs. The nonbuild alternative is developed and evaluated as part of the early facility planning and design process.

9.1.4   Maintenance
9.1.4.1 General

There is a maintenance responsibility and cost for every asset that is administered by the National Park Service.  A regular, periodic inventory and condition assessment of park assets will be performed to identify deficiencies and to ensure the cost-effective maintenance of all facilities.  The costs of operation and the useful life of facilities and equipment are directly related to the type and level of maintenance provided. Therefore, the Service will conduct a program of preventive and rehabilitative maintenance and preservation to (1) provide a safe, sanitary, environmentally protective, and esthetically pleasing environment for park visitors and employees; (2) protect the physical integrity of facilities; and (3) preserve or maintain facilities in their optimum sustainable condition to the greatest extent possible. Preventive and rehabilitative maintenance programs will incorporate sustainable design elements and practices to ensure that water and energy efficiency, pollution prevention, and waste prevention and reduction are standard practice.

Obirek Decl., Ex. 1.

12

1        As with the Organic Act, the Government asserts that these NPS Management policies contain

2   no specific, mandatory directions on how footbridges should be designed, built or maintained.

3        In her Opposition, Plaintiff argues that courts have held that matters of routine maintenance

4   are not protected by the discretionary function exception.  Opp. at 5.  In support, Plaintiff cites

5   *Terbush*, 516 F.3d at 1133; *Morton v. United States*, 2010 WL 3981129 (D. Ariz. Oct. 8, 2010); and

6   *ARA Leisure Servs. v. United States*, 831 F.2d 193 (9th Cir. 1987).  While these cases hold that

7   maintenance decisions may not fall within the discretionary function exception, the decisions rest on

8   the second prong of the *Berkovitz* analysis, focusing on whether the challenged action involves

9   considerations of public policy; they do not address the first factor regarding whether the

10   maintenance decision is discretionary.  Thus, they are inapposite at this stage of the analysis.

11        Reviewing the Organic Act and selected chapters of the NPS Management Policies 2006, the

12   Court agrees with the Government that they provide wide latitude to the NPS when it comes to issues

13   of construction, safety, and maintenance.  Particularly, there is no evidence that any statute,

14   regulation, or management policy chapter establishes a mandatory policy dictating how NPS is to

15   maintain federal parks, generally, or Crissy Field – including the footbridge and running path –

16   specifically.  Rather, as the Ninth Circuit has recognized, the Organic Act sets forth a "broad mandate

17   to balance conservation and access." *Terbush*, 516 F.3d at 1130.  Further, the NPS Management

18   Policies dealing with maintenance simply provides that the NPS "will conduct a program of

19   preventative and rehabilitative maintenance and preservation to (1) provide a safe, sanitary,

20   environmentally protective, and esthetically pleasing environment for park visitors and employees;

21   (2) protect the physical integrity of facilities; and (3) preserve or maintain facilities in their optimum

22   sustainable condition to the greatest extent possible."  It does not prescribe specific procedures that

23   NPS must follow in accomplishing that task, but allows NPS to decide how to fashion maintenance

24   plans that best achieve the stated goals of providing a safe environment and protecting and preserving

25   the facilities.  *See Blackburn*, 100 F.3d at 1431 ("Although the policy manuals outline general policy

26   goals regarding visitor safety, they do not set out the specific means by which the NPS employees are

27   to meet these general goals.")  Thus, as to the first prong of the *Berkovitz* analysis, the Court agrees

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

13

1   with the Government that the NPS's maintenance plan for Crissy Field is discretionary in nature.

2       The Court must next consider whether that the maintenance plan is of the kind that the

3   discretionary function exception was designed to shield – specifically, whether it involves

4   considerations of public policy. *Berkovitz*, 486 U.S. at 536.

5       The Government argues that the NPS's plan for maintaining the bridge is intertwined with the

6   decision to construct a bridge that meets a path made of and maintained with decomposed granite.

7   Mot. at 18.  It asserts that "the decisions regarding where to place the bridge, the materials to use and

8   the plan for maintaining it all are susceptible to policy analysis." *Id*.  Specifically, the Government

9   proffers the following:

> In performing its analysis, NPS needed to take into consideration a variety of
> competing needs and interests, including, but not limited to, preservation of the
> environment, preservation of the waterway, accessibility for a variety of different
> users, the aesthetics of the area, the views afforded by the trail, including numerous
> views of Golden Gate Bridge, and public enjoyment and safety. *Id*.  Similarly, the
> decisions where and how to build, the materials to use and the manner to maintain the
> paths at Crissy Field all are addressed, to some extent, in the NPS Management
> Policies 2006.  The sections dealing with construction and maintenance both lay out
> some of the concerns.  For example, Policy 9.1.3 pertaining to construction states that
> "design, siting, construction, building materials, utility systems, recycling of all
> unusable materials, and waste management" all should be considered when making
> decisions whether to build.  Obirek Decl., Exh. B.  Similarly, with respect to
> maintenance, NPS Management Policies 2006 Section 9.1.4.1 states that when making
> maintenance decisions, NPS should consider the "responsibility and cost for every
> asset that is administered by the National Park Service."  In addition the section directs
> the NPS to consider the "costs of operation and the useful life of facilities and
> equipment" as well as "a program of preventive and rehabilitative maintenance and
> preservation to (1) provide a safe, sanitary, environmentally protective, and
> esthetically pleasing environment for park visitors and employees; (2) protect the
> physical integrity of facilities; and (3) preserve or maintain facilities in their optimum
> sustainable condition to the greatest extent possible."  The NPS also should
> "incorporate sustainable design elements and practices to ensure that water and energy
> efficiency, pollution prevention, and waste prevention and reduction are standard
> practice."

*Id*.  The weakness in the Government's argument, however, is that it completely fails to connect these

purported policy considerations to the maintenance plan as articulated by Mr. Obirek.  Stated another

way, the Government has not articulated how the decision to set up a maintenance system that

"requires at least once daily visits by park staff" and how decisions as to when to fill the decomposed

granite that erodes away, *are decisions based on policy considerations as opposed to matters of*

28

14

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   *routine maintenance that do not involve any matters of public policy.*

2       This distinction is critical.  As Plaintiff points out, the Ninth Circuit has recognized that

3   matters of routine maintenance do not come within the discretionary function exception because they

4   generally do not involve any weighing of policy considerations.  The Ninth Circuit's decision in

5   *Terbush* is instructive on this issue.  In *Terbush*, the family members of a mountain climber killed by

6   a rockslide in Yosemite National Park sued the United States pursuant to the FTCA, asserting that the

7   NPS created unsafe conditions by design, construction, operation, and maintenance of a wastewater

8   management system on Glacier Point Apron, and that the NPS failed to warn of the dangerous

9   condition it created.  516 F.3d at 1128.  The trial court granted the United States' motion to dismiss,

10  finding that the discretionary function exception applied; the plaintiffs appealed.  On appeal, the

11  United States maintained that the NPS's decisions and actions were discretionary ones grounded in

12  the policy regime established by the Organic Act, which it contended does not create mandatory

13  duties, but discretionary decisions that are susceptible to policy analysis and are thus immune from

14  judicial review under the discretionary function exception.  *Id.* at 1131.  In considering the parties'

15  arguments, the Ninth Circuit first noted that the Organic Act sets fort the broad policy considerations

16  that govern the NPS's management of national parks, and thus, each of the plaintiffs' claims must be

17  analyzed in light of the applicable policies and the Organic Act.  *Id.* at 1130-31.  Considering the

18  plaintiffs' claims based on negligent design and failure to implement safety reviews, the Ninth Circuit

19  noted that case law had established that design matters involve discretionary decisions by government

20  actors and that the NPS's Management Policies did not create mandatory and specific provisions

21  requiring that impairment, safety, and hazard reviews prior to the construction of the wastewater

22  facilities.  *Id.* at 1131-32.  As to the plaintiffs' claim that NPS was negligent in the operation and

23  maintenance of the wastewater system, the appellate court reached a different conclusion.  As to the

24  first *Berkovitz* prong, the court held that, "absent a mandatory and specific policy dictating otherwise,

25  we are left to assume that the maintenance of the wastewater management system is a discretionary

26  function."  *Id.* at 1133.  The court then turned to the question whether such maintenance work would

27  involve protected policy judgments.  *Id.*  The United States argued that the maintenance of the

28

1  wastewater system implicates policy concerns of the regulatory regime of the Organic Act and other

2  policies.  *Id.*  The court, however, was unpersuaded, reasoning:

> It is a long leap from routine maintenance of a wastewater system to fighting forest fires and guarding prisoners.  The decisions and action in the cases highlighted by *Whisnant* appear to involve far more than mere maintenance (indeed, what unites them are safety considerations), which returns our focus to the "nature" of the actions and decisions in question here.
>
> Our case law directs that, by nature, matters of routine maintenance are not protected by the discretionary function exception because they generally do not involve policy-weighing decisions or actions.  *See Bolt v. United States*, 509 F.3d 1028, 1034 (9th Cir. 2007) (observing that snow removal from a parking lot is "maintenance work," which is "'not the kind of regulatory activity' to which the Supreme Court envisioned the discretionary function exception applying") (quoting *ARA Leisure Servs. v. United States*, 831 F.2d 193, 195 (9th Cir. 1987).  For example, in *Whisnant*, we confronted a clear case of maintenance failure: claims against a naval commissary for failing to eradicate a mold problem in its meat department.  *See Whisnant*, 400 F.3d at 1181.
>
> Looking to other circuits, we observe that sometimes "maintenance" is far from routine and may involve considerable discretion that invokes policy judgment.  *See, e.g., Mitchell v. United States*, 225 F.3d 361, 364 (3d Cir. 2000) (noting that repairing roadside wall involved balancing several policy considerations); *Baum v. United States*, 986 F.2d 716, 723–24 (4th Cir. 1993) (noting that maintenance could be accomplished only by "outright replacement," and was thus a decision about "how and when to replace a major element of a substantial public facility" that implicated economic and political policy, i.e., allocation of funds); *Cope*, 45 F.3d at 451 (observing that further repairs of a road required NPS to prioritize among its repairs and to "establish priorities for the accomplishment of its policy objectives against such practical considerations as staffing and funding.") (quoting *Varig*, 467 U.S. at 820, 104 S.Ct. 2755).
>
> Though our own case law frowns upon the government relying solely on fiscal policy and budgetary constraints as the "protected" policy considerations protected by the exception, *Cope* and *Baum* nonetheless lend support to the government's arguments by substantiating the possibility that particular maintenance activities, unlike cleaning out mold from a store, as in *Whisnant*, or re-paving a road to precise specifications, as in *ARA Leisure*, can involve more than initially meets the eye.  If the maintenance of the wastewater facilities turned out to involve a balancing of policy considerations, more complex decisions or outright replacement, as in *Baum*, these decisions would tend to implicate the broader mandates of the NPS's policy regime.
>
> The difficulty here is that we cannot determine on the record before us whether the challenged maintenance at issue is maintenance that falls beyond policy judgments or whether it tends to the other end of the spectrum, which implicates broader mandates of NPS's policy regime.  Merely establishing that the boundaries of maintenance are discretionary is not sufficient.
>
> Although we recognize *Gaubert's* presumption of actions taken in furtherance of a regulatory regimes goals to be "grounded" in the policy of the regulatory regime, and are aware that we do not need actual evidence of policy-weighing in any given decision, there still must be some support in the record that the decisions taken are

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

"susceptible" to policy analysis for the discretionary function exception to apply.  On this point, the government bears the burden.  It is not sufficient for the government merely to waive the flag of policy as a cover for anything and everything it does that is discretionary in nature. [. . . .]

[ . . . .]

   Because the parties and the district court to some degree lumped the question of maintenance together with the other claims regarding design and construction, we cannot determine whether the government met its burden to prove the applicability of the exception as a matter of law.  Accordingly, we remand for further proceedings on this issue.

*Id*. at 1133-34 (footnotes omitted).  Comparing the instant case to *Terbush*, the Government's argument fails for the same reasons.  Here, the Government has merely cited to sections of the NPS Management Policies that set forth considerations that are to guide the NPS in designing and maintaining park lands.  It does not explain how these considerations played a roll in the stated maintenance plan or even how the maintenance would be susceptible to such considerations.  Moreover, as in *Terbush*, the Government has "lumped the question of maintenance together with the other claims regarding design and construction."  Thus, as in *Terbush*, this Court "cannot determine on the record . . . whether the challenged maintenance at issue is maintenance that falls beyond policy judgments or whether it tends to the other end of the spectrum, which implicates broader mandates of NPS's policy regime."  *Id*. at 1134.  Consequently, the Court finds that the Government has failed to meet its burden with respect to the second prong of the *Berkovitz* analysis and therefore **DENIES** its Motion as to Plaintiff's negligent maintenance on that basis.

However, as discussed during the hearing on this matter, the Court is concerned that neither party has sufficiently articulated exactly what the maintenance plan or maintenance decisions were that form the basis of Plaintiff's claim.  To the extent that the maintenance plan involves more than that described by Mr. Obirek, that is the maintenance plan which should be presented to the Court for determination of whether the discretionary function exception applies.  As it stands, neither party has adduced evidence regarding that plan.  Plaintiff has also indicated that the scope of her negligent maintenance plan is more limited than that briefed in the parties' moving papers.  Specifically, Plaintiff indicates that it is based on the NPS's failure to fill the granite, thereby exposing the lip of

UNITED STATES DISTRICT COURT
For the Northern District of California

1   the cement footbridge.  Thus, Plaintiff's claim shall be limited to this theory going forward.  With this

2   in mind, the Court finds it necessary to reopen discovery so that the parties may develop this issue.

3   If, after this supplemental discovery period closes, the Government believes that the discretionary

4   function exception applies to Plaintiff's negligence maintenance claim, it may reassert that argument,

5   taking into account the discussion set forth above and the Court's expectations of what it must

6   address in light of controlling Ninth Circuit case law.  For this reason, the Court's denial of the

7   Government's Motion based on the discretionary function exception is **WITHOUT PREJUDICE**.

8                    *b.    Dangerous Condition*

9          The Government argues that, to the extent Plaintiff is asserting that the design of the area

10   where the path meets the footbridge was faulty, design and construction decisions in national parks

11   are discretionary decisions that require the balancing of policy considerations, and cites *ARA Leisure*

12   *Servs. v. United States*, 831 F.2d 193, 195 (9th Cir. 1987), in support.  In her Opposition, Plaintiff

13   does not address whether the discretionary function exception applies to her dangerous condition

14   claim.

15          Looking at the first *Berkovitz* factor, as Defendant points out, Plaintiff has not identified any

16   statute or regulation that prescribes a mandatory duty with respect to designing or constructing the

17   path or footbridge at Crissy Field.  To the contrary, the Organic Act and the chapters of the NPS

18   Management Policies grant wide authority to the NPS to design and construct area on national park

19   lands consistent with the interests of visitor safety, conservation of the environment, utilizing

20   sustainable design elements and practices.  Although the Government has not submitted any evidence

21   on the issue, where and how to design the area where the path meets the footbridge arguably involves

22   an element of judgment or choice.  Thus, the design and construction of the path and footbridge of

23   Crissy Field are properly characterized as discretionary in nature.

24          As to the second prong, the Government argues that deciding where to place the bridge, the

25   materials to use, and the plan for maintaining the bridge are all susceptible to a policy analysis.  It

26   argues that "[i]n performing its analysis, NPS needed to take into consideration a variety of

27   competing needs and interests, including, but not limited to, preservation of the environment,

28

preservation of the waterway, accessibility for a variety of different users, the aesthetics of the area, the views afforded by the trail, including numerous views of Golden Gate Bridge, and public enjoyment and safety." Mot. at 18.  Defendant also argues that the decisions about where and how to build, the materials to use, and the manner to maintain the paths at Crissy Field are all addressed in the 2006 NPS Management Policies.  Looking at Mr. Obirek's testimony, in paragraph 5 he discusses the reasoning behind the decision to cover the portion of the trail that meets the concrete slab of the footbridge with decomposed granite.  The Ninth Circuit has indicated that the decision must only be "susceptible" of a policy analysis; evidence that such an analysis was undertaken is not required. *Terbush*, 516 F.3d at 1134.  Here, the decision of where and how to design the area where the path meets the footbridge involves weighing public policy considerations, such as those included in the NPS Management Policies regarding visitor safety and access and preserving the environment and waterway.  Accordingly, the Court finds that the second *Berkovitz* factor is satisfied.

Taken together, because the design and construction of the area at issue in this case was discretionary and involved considerations of public policy, it falls within the discretionary function exception, and the Government is immune from suit on the basis of such claim.  The Court therefore **GRANTS** the Government's motion to dismiss Plaintiff's dangerous condition claim based on the design of the area where the trail and footbridge connect.

**C.    California's Recreational Use Statute, California Civil Code Section 846**

The Government argues that even if Plaintiff's negligent maintenance claim is premised on routine maintenance and is thus not barred by the discretionary function exception, it is nonetheless barred by California's recreation use statute, California Civil Code section 846.  Plaintiff, however, argues that because the Government's conduct was willful and malicious, it is excepted from protection under section 846.

**1.    Legal Standard**

The Government's potential liability in this matter is determined under California law.  28 U.S.C. § 1346(b).  Therefore, the government is liable only to the extent a private individual in California would be liable.  *Simpson v. United States*, 652 F.2d 831, 833 (9th Cir. 1981).  California

19

law generally imposes upon an owner of real property a duty to act "as a reasonable man in view of the probability of injury to others" upon the owner's land. *Rowland v. Christian*, 69 Cal. 2d 108, 119 (1968). Thus, a landowner is generally liable if the landowner fails either to: (1) guard against injury to a visitor, or (2) warn the visitor of dangerous conditions upon the property. *Id.* One exception to the general rule is California's recreational-use statute which provides:

> An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section.

> A "recreational purpose," as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites.

> An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

> This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

Cal. Civ. Code § 846.

The California Legislature has established two preconditions to invoking section 846 immunity: "(1) the defendant must be the owner of an 'estate or any other interest in real property, whether possessory or nonpossessory', and (2) the plaintiffs' injury must result from the 'entry or use [of the premises] for any recreational purpose.'" *Ornelas v. Randolf*, 4 Cal. 4th 1095, 1100 (1993); *Gordon v. Havasu Palms, Inc.*, 93 Cal. App. 4th 244, 255 (2001).

UNITED STATES DISTRICT COURT
For the Northern District of California

20

2.   <u>Application</u>

Starting with the preconditions, as to the first requirement, it is beyond dispute that the Government owns the federal park land in question.  As to the second condition, Plaintiff testified that she entered Crissy Field on September 30, 2010 for "recreation, exercise, running," and that she sustained her injury as a result of such activity.  McAllister Depo. at 47:2-5, Ex. 2 to Simmons Decl., Dkt. No. 20; Decl. of Lucy McAllister, ¶ 3, Dkt. No. 29.  The question on this prong is whether running qualifies as a "recreational use."  While section 846 does not expressly list running as a recreational activity, California courts have noted that the phrase "recreational use" is to be construed broadly based on the statute's use of the word "includes," which indicates a term of enlargement, rather than limitation.  *Gordon*, 93 Cal. App. 4th at 256 (citing *Ornelas*, 4 Cal. 4th at 1100-01).  Because running is consistent with the other types of sport and physical activities listed in section 846, the Court finds that it is properly classified as a recreational activity.  *See Cases v. United States*, 19 F. Supp. 2d 1104, 1107 (C.D. Cal. 1998) (finding that running a race on federal land was a recreational purpose).

Having met the preconditions to invoking section 846 immunity, the question becomes whether any of the three exceptions listed in section 846 apply.  Plaintiff argues that section 846 is inapplicable because the NPS's conduct was willful and malicious.  As stated above, under section 846, the Government is liable as a land owner only for "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity."  Cal. Civ. Code, § 846.  The Ninth Circuit analyzes potential liability under an "intentional tort standard."  *Spires v. United States*, 805 F.2d 832, 834 (9th Cir. 1986).  "The meaning assigned to wilful misconduct by the California courts is any intentional act of an unreasonable character undertaken in disregard of a known risk or a risk so obvious that the actor must be taken to have been aware of it, and so great as to make resulting harm highly probable."  *Rost v. United States*, 803 F.2d 448, 451 (9th Cir. 1986).  The California Court of Appeals has established essential elements to qualify a land owner's actions as wilful misconduct: "(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious

UNITED STATES DISTRICT COURT
For the Northern District of California

21

1   failure to act to avoid the peril." *Morgan v. S. Pac. Transp. Co.*, 37 Cal. App. 3d 1006, 1012 (1974).

2         In her Opposition, Plaintiff argues that "[w]hether Defendant was willful or malicious in its

3   design, construction, or maintenance of the area where the trail meets the bridge are material issues of

4   fact that must be determined by the trier of fact." Opp. at 12.  In support of her argument, Plaintiff

5   merely cites to testimony from Mr. Obirek and generally to exhibits attached to Mr. Birnberg's

6   Declaration.  Thus, the lack of focus in Plaintiff's claim and her failure to cite evidence in support

7   prevent the Court from undertaking any meaningful analysis of this issue.  For example, Plaintiff

8   asserts that, "[i]t is clear that Defendant had, at the very least, constructive knowledge." Opp. at 8.

9   Plaintiff at another point argues that "Common sense dictates that when there is at least a one inch

10  (and possibly bigger) piece of cement jutting out in the transition between a path and a footbridge

11  where people are expected to run and job the probability of some tripping and getting hurt is high."

12  *Id*.  Plaintiff cites to no evidence in support of these assertions.  It is not the Court's responsibility to

13  distill Plaintiff's theories of liability and comb through exhibits and the record to find evidence to

14  support her claims.  However, as discussed above, because further discovery needs to be done on

15  Plaintiff's negligent maintenance claim, at this juncture, the Court **DENIES** summary judgment on

16  this issue **WITHOUT PREJUDICE** to the Government reasserting its argument after the

17  supplemental discovery period has concluded.

18  **D.      NEGLIGENCE AND ASSUMPTION OF RISK**

19        The Government argues that it is entitled to summary judgment because Plaintiff lacks

20  evidence to establish that the NPS was negligent and because the facts establish that she assumed the

21  risk of injuring herself while night running.  Mot. at 24-25.

22        In her Opposition, Plaintiff argues that the Government waived the assumpton of risk defense

23  because it did not assert it in its Answer, and that triable issues of fact exist, precluding summary

24  judgment on the issue.

25        Because it is possible that the Government is entitled to immunity under the discretionary

26  function exception under the FTCA and California's recreational use statute, the Court declines to

27  address these arguments at this juncture.  The Court therefore **DENIES** the Government's request for

28

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  summary judgment on the assumption of risk defense and Plaintiff's remaining negligent

2  maintenance claim (which, at this stage remains vague) **WITHOUT PREJUDICE**.

3  **E.      SUPPLEMENTAL DISCOVERY**

4          As this Order highlights, there was an apparent breakdown of the discovery process in this

5  matter.  As a result, the Government is moving for dismissal and summary judgment on claims that

6  are ambiguous both to it and to this Court.  A dispositive motion after discovery has closed is not the

7  appropriate time to attempt to flesh out the claims at issue in a case.  To allow the parties an

8  opportunity to distill the negligent maintenance claim that remains at issue and adduce evidence in

9  support or in defense of such claim, the Court will re-open discovery and sets the following

10  deadlines.

11  **F.      CASE MANAGEMENT DEADLINES**

12          The June 27, 2013 pretrial conference, July 26, 2013 final pretrial conference, and July 30,

13  2013 trial dates are **VACATED**.

14          Plaintiff shall depose Mr. Obirek no later than **July 23, 2013**.

15          The Government shall produce any documents relevant to Plaintiff's negligence maintenance

16  claim no later than **July 8, 2013**.

17          The Court sets this matter for a status conference on **August 1, 2013** at 10:00 a.m. in

18  Courtroom B.  Plaintiff shall come prepared with a list of any additional individuals needed to be

19  deposed at that time based on Mr. Obirek's testimony and the documents produced.  The Court will

20  reset the dipositive motion deadline, pretrial hearing dates, and trial date at that time.

21                              **IV.   CONCLUSION**

22          For the reasons set forth above, the Court **GRANTS** the Government's Motion with respect to

23  dismissal of the agency and individual Federal Defendants and **GRANTS** the motion to dismiss

24  Plaintiff's dangerous condition claim based on a negligent design theory.

25  / / /

26  / / /

27  / / /

28

The Court **DENIES** the Motion **WITHOUT PREJUDICE** as to Plaintiff's negligent maintenance claim.

**IT IS SO ORDERED.**

Dated: June 7, 2013

_____
Maria-Elena James
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California

24